```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
COBBLESTONE ADVISORY GROUP, LLC,    :
                                         10 Civ. 4761 (WHP)
                Plaintiff,          :
                                         MEMORANDUM & ORDER
        -against-                   :

THE LEMBI GROUP PARTNERS, LLC, et al., :

                Defendants.         :
-----------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 11/22/11

WILLIAM H. PAULEY III, District Judge:

Plaintiff Cobblestone Advisory Group, LLC ("Cobblestone") brings breach of contract, account stated, and unjust enrichment claims against Defendants, a related group of real estate companies, trusts, and individuals based in San Francisco (collectively, "The Lembi Group"). By letter agreement, The Lembi Group retained Cobblestone to help them avoid defaulting on certain loans. Cobblestone seeks to recover $570,000 in fees. The Lembi Group counterclaims for breach of contract and false representation, seeking unspecified damages as a result of Cobblestone's alleged failure to renegotiate its loans. The parties move for summary judgment on Cobblestone's claims.

Cobblestone's motion for summary judgment is granted with respect to its breach of contract claim and denied in all other respects. The Lembi Group's motion for summary judgment is granted with respect to Cobblestone's account stated and unjust enrichment claims and denied in all other respects. This Court also awards summary judgment to Cobblestone dismissing The Lembi Group's counterclaims.

## BACKGROUND

Cobblestone is a Delaware limited liability company with members residing in Florida and New York. (Joint Statement of Undisputed Material Facts dated Aug. 3, 2011 ("Joint Stmt.") ¶ 1) (ECF No. 25). As Cobblestone learned in discovery, The Lembi Group is a shorthand label encompassing a group of related entities. (Affidavit of Robert Strassberg in Support of Cobblestone's Motion for Summary Judgment dated Aug. 24, 2011 ("Strassberg Aff.") Ex. 20, Deposition of Frank Lembi dated Apr. 14, 2011 ("Lembi Dep.") at 8; Strassberg Aff. Ex. 11, Deposition of Edward Singer dated Apr. 7, 2011 ("Singer Dep.") at 6-7.) The Defendants include twenty-two California limited liability companies (the "Corporate Defendants"), six California trusts (the "Trust Defendants"), and individuals Frank Lembi, Billie Salevouris, David Raynal, Ralph Raynal, and Ralph Dayan (the "Individual Defendants"). (Joint Stmt. ¶¶ 2, 3, 5, 6.) Defendants Frank Lembi, David Raynal, Billie Salevouris, and Ralph Dayan are trustees of the Trust Defendants. (Joint Stmt. ¶ 7.) Defendant Walter Lembi is deceased. (Joint Stmt. ¶ 4.) The late Mr. Lembi was trustee of the Walter and Linda Lembi Trust. (Joint Stmt. ¶ 7.)

1.          The Loans

Each of the Corporate Defendants, with the exception of The Lembi Group Partners, LLC, owned real property and borrowed heavily against it. (Joint Stmt ¶¶ 9, 13, 22.) Each of the Individual Defendants and Trust Defendants executed payment guarantees of the Corporate Defendants' obligations and hold beneficial ownership interests in the Corporate Defendants. (Joint Stmt ¶¶ 11, 14, 16, 18, 20, 23, 25, 27, 29, 31, 34, 36, 38, 40, 42.)

The loans at issue here were structured in three bridges: Bridge IV, Bridge VI, and Bridge VII. (Joint Stmt ¶ 8.) The Bridge IV loan consists of a single secured loan to several of the Corporate Defendants. (Joint Stmt. ¶ 9.) Defendants Frank Lembi, Walter Lembi, and the Olga Lembi Trust each executed a Guaranty of Payment Obligations in connection with this loan. (Joint Stmt. ¶ 11.) Prior to Defendants' engagement of Cobblestone, the lender on the Bridge IV loan filed a notice of default, commenced a foreclosure action, moved to appoint a receiver, and accelerated the loan's maturity date. (Singer Dep. at 43-44.)

The Bridge VI loan consists of four separate loans to several of the Corporate Defendants. (Joint Stmt. ¶ 12, 13, 15.) Many of the Individual Defendants and Trust Defendants executed payment guarantees in connection with the Bridge VI loan. (Joint Stmt. ¶¶ 14, 16, 18, 20.) The Bridge VII loan consists of ten separate loans to several of the Corporate Defendants. (Joint Stmt. ¶¶ 21, 22, 24, 26, 28, 30, 33, 35, 39, 41.) Again, many of the Individual Defendants and Trust Defendants executed payment guarantees in connection with the Bridge VII loan. (Joint Stmt. ¶¶ 23, 25, 27, 29, 31, 34, 36, 38, 40, 42.)

2. The Letter Agreement

On June 25, 2009, Cobblestone and The Lembi Group entered into a letter agreement (the "Agreement") (Joint Stmt. ¶ 43.) Under the Agreement, Cobblestone would "provide real estate and financial advisory services in connection with the first mortgage loans and mezzanine financing" in Bridge IV, VI, and VII. (Affidavit of Edward Singer in Support of Appearing Defendants' Motion for Summary Judgment dated Aug. 24, 2011 ("Singer Aff.") Ex. D, Agreement ¶ 1) (ECF No. 26). In addition, the Agreement required The Lembi Group to pay Cobblestone an up-front retainer of $30,000 and then an additional $50,000 for each six-month

loan extension that Cobblestone negotiated with The Lembi Group's creditors. (Agreement Schedule B.) Citi Funding Group, Inc.—one of The Lembi Group entities—paid the Cobblestone retainer. (Joint Stmt. ¶ 46.)

### 3. Cobblestone Negotiates Extensions

In accord with its obligations under the Agreement, Cobblestone negotiated extensions for all three of the bridge loans with The Lembi Group's creditors. (Strassberg Aff. Exs. 5-7.) The Bridge VI modification agreement was signed on November 30, 2009, the Bridge VII modification agreement was signed on December 17, 2009, and the Bridge IV modification agreement was signed on March 23, 2010. (Joint Stmt. ¶¶ 48, 50, 52.)

Although The Lembi Group borrowers had defaulted on their Bridge IV obligations on March 3, 2009, Cobblestone negotiated an extension until September 30, 2011. (Strassberg Aff. Ex. 5; Singer Dep. at 43-44.) For Bridge VI, Cobblestone negotiated extensions on four of the underlying loans from May 11, 2009 to November 11, 2011. (Joint Stmt. ¶ 49; Strassberg Aff. Ex. 6.) For Bridge VII, Cobblestone negotiated extensions on ten of the underlying loans from November 11, 2009 to November 11, 2011. (Strassberg Aff. Ex. 7.) Each of the Corporate Defendants that benefitted from the loan extensions signed the modification agreements. (Strassberg Aff. Exs. 5-7.)

In addition to the loan extensions, Cobblestone also negotiated for the release of the various Individual Defendants' and Trust Defendants' payment guarantees on the loans. (Strassberg Aff. Exs. 9-10.) Under the modification agreements, creditors released payment guarantees totaling over $1 billion. (Strassberg Aff. Exs. 9-10.)

4. Cobblestone Bills The Lembi Group

Cobblestone argues that it secured four six-month extensions for each of the Bridge IV, Bridge VI, and Bridge VII loans, for a total of twelve six-month extensions. (Plaintiff's Memorandum of Law in Support of Summary Judgment at 8.)  But these calculations understate Cobblestone's efforts.  In fact, Cobblestone negotiated a total of fourteen extensions: a thirty-month forbearance agreement (or five six-month extensions) for Bridge IV, a thirty-month extension (or five six-month extensions) for Bridge VI, and a twenty-four month extension (or four six-month extensions) for Bridge VII.  (Strassberg Aff. Exs. 5-7.)  Nevertheless, Cobblestone conceded at oral argument that it has waived payment for any extensions above and beyond the twelve that it sued for.  (Hearing Transcript dated Oct. 14, 2011 ("Hr'g Tr.") 4-5.)

On September 16, 2009, Cobblestone sent The Lembi Group an invoice for $370,000 for the Bridge VI and Bridge VII extensions.  (Affidavit of Brad Cohen in Support of Cobblestone's Motion for Summary Judgment dated Aug. 24, 2011 ("Cohen Aff.") Ex. 16) (ECF No. 31).  On November 2, 2009, Cobblestone sent The Lembi Group an invoice for $200,000 for the Bridge IV extension. (Cohen Aff. Ex. 16.)  Cobblestone never received any objections from The Lembi Group.  (Cohen Aff. Ex. 16.)  Rather, The Lembi Group advised Cobblestone that it was experiencing cash flow problems.  (Cohen Aff. Ex. 16.)

DISCUSSION

I. Legal Standard

Summary judgment should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The burden of demonstrating the absence of any genuine dispute as to a material fact rests with the moving party. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). Once the moving party has made an initial showing that there is no genuine dispute of material fact, the non-moving party cannot rely on the "mere existence of a scintilla of evidence" to defeat summary judgment but must set forth "specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis in original); see also Niagara Mohawk Power Corp. v. Jones Chem., Inc., 315 F.3d 171, 175 (2d Cir. 2003) (citation omitted). "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." Beyer v. Cnty. of Nassau, 524 F.3d 160, 163 (2d Cir. 2008) (quoting Guilbert v. Gardner, 480 F.3d 140, 145 (2d Cir. 2007)). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Scott v. Harris, 550 U.S. 372, 380 (2007) (citing Matsushita, 475 U.S. at 586-87). The Court resolves all factual ambiguities and draws all inferences in favor of the non-moving party. Liberty Lobby, 477 U.S. at 255; see also Jeffreys v. City of N.Y., 426 F.3d 549, 553 (2d Cir. 2005).

II.     Breach of the Agreement

Cobblestone alleges—and Defendants do not dispute—that the entities constituting The Lembi Group have not paid Cobblestone anything for its services beyond the $30,000 initial retainer. (Cohen Aff. Ex. 16.) As such, Cobblestone alleges that The Lembi Group entities have breached the Agreement. Although the Agreement contains a mandatory arbitration provision, the parties have consented to litigate in this Court. (Hr'g Tr. 5-6.)

In order to establish a breach of contract claim under New York law, a party must demonstrate (1) the existence of a contract, (2) plaintiff's performance, (3) breach by the defendant, and (4) damages. See Harsco Corp. v. Segui, 91 F.3d 337, 348 (2d Cir. 1996). A motion for summary judgment in a contract dispute may be granted "only when the contractual language on which the moving party's case rests is found to be wholly unambiguous and to convey a definite meaning." Topps Co. v. Cadbury Stano S.A.I.C., 526 F.3d 63, 68 (2d Cir. 2008). It is well settled that "a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." Greenfield v. Philles Records, 98 N.Y.2d 562, 569 (2002).

Here, the Agreement clearly provides that The Lembi Group is obligated to pay Cobblestone $50,000 for each six-month loan extension that Cobblestone successfully negotiates. (Agreement Schedule B.) It is undisputed that Cobblestone negotiated several loan extensions for the Bridge VI and Bridge VII loans. Furthermore, it is undisputed that Cobblestone convinced the Bridge IV lenders to extend the due date until September 30, 2011 even though The Lembi Group entities were already in default. To the extent that The Lembi

Group entities have not paid Cobblestone at all for securing these extensions, they are plainly in breach of the Agreement.

The Lembi Group entities argue that they did not breach the Agreement for two reasons. First, with respect to Bridge IV, The Lembi Group argues that there was no extension of the loan because the loan was already in default. Thus, The Lembi Group contends that Cobblestone merely secured a forbearance, not an extension, of the Bridge IV loan, and is not entitled to any fees. With respect to Bridge VI and Bridge VII, The Lembi Group argues that Cobblestone secured the extensions only by agreeing to a number of terms that Cobblestone knew The Lembi Group would be unable to meet. For example, both the Bridge VI and Bridge VII modification agreements provided that the borrowers would (i) pay an additional sum of $51,112.50 per month for 24 months, (ii) make mandatory principal payments every six months, and (iii) remove a million dollar second mortgage. (Strassberg Aff. Exs. 6-7.) According to The Lembi Group, Cobblestone knew that Defendants would be unable to meet these conditions, and, in fact, The Lembi Group defaulted within six months. Thus, The Lembi Group argues that, at most, it should owe Cobblestone fees for only one six-month extension for Bridge VI and Bridge VII.

Given the clear terms of the Agreement, The Lembi Group's arguments are meritless. It is plain that Cobblestone negotiated an "extension" of the Bridge IV loan when it convinced the lenders to forebear their right to immediate payment and foreclosure for a set period of time. The Lembi Group cites no authority to the contrary, and the Bridge IV forbearance agreement that Cobblestone negotiated satisfies the plain meaning of an "extension." As for the Bridge VI and Bridge VII loans, Cobblestone negotiated several extensions. The

Agreement does not contain any conditions on The Lembi Group's obligation to compensate Cobblestone for these extensions, even if Cobblestone knew that The Lembi Group would not be able to meet their obligations. More importantly, The Lembi Group agreed to each of the loan modifications, and did not protest any of the lenders' conditions. And the Court is bound to enforce the plain and unambiguous terms of the Agreement as it is written. See Greenfield, 780 N.E.2d at 170. As such, The Lembi Group breached its obligations under the Agreement and Cobblestone is entitled to summary judgment.

Defendants also claim that they are not bound by the Agreement because only "The Lembi Group" signed it. They claim that "The Lembi Group" referred to The Lembi Group Partners LLC, an entity which—conveniently for Defendants—has no assets. (Singer Dep. at 6-7.) But as all parties now recognize, "The Lembi Group" was simply a shorthand used to refer to all of the related Lembi entities. (Lembi Dep. at 8.) If Defendants' argument were accepted, then The Lembi Group perpetrated a brazen fraud on Cobblestone. To avoid that injustice, the Court deems Cobblestone's complaint amended to assert breach of contract claims against each of the Corporate Defendants that, in reality, constitute The Lembi Group. See Wahlstrom v. Kawasaki Heavy Indus., Ltd., 4 F.3d 1084, 1087 (2d Cir. 1993); see also Fed. R. Civ. P. 15(b)(2).

Moreover, this interpretation is consistent with the parties' intent. Because Citi Funding Group paid the retainer, Defendants obviously viewed "The Lembi Group" as referring to a group of related entities. As such, the Corporate Defendants are jointly liable to Cobblestone for breach of contract. See Restatement (Second) of Contracts § 289(2) (2011) ("Where two or more parties to a contract promise the same performance to the same promisee,

they incur only a joint duty unless an intention is manifested to create several duties or joint and several duties."); accord Tradewell Foods v. N.Y. Credit Men's Adjustment Bureau, 179 F.2d 567, 568 (2d Cir. 1950). Because Cobblestone has waived its right to payment for two of the six-month extensions that it negotiated, the Corporate Defendants are jointly liable to Cobblestone for $570,000.

### III. Account Stated

Because The Lembi Group did not object to the invoices for $370,000 and $200,000 that Cobblestone sent, Cobblestone argues it is entitled to an award of $570,000 for an account stated. The Lembi Group counters that the Agreement's existence precludes a claim for an account stated.

Under New York law, an account stated "is an agreement, express or implied, . . . independent of the underlying agreement, as to the amount due on past transactions." Leepson v. Allan Riley Co., 04 Civ. 3729 (LTS), 2006 WL 2135806, at *4 (S.D.N.Y. July 31, 2006) (internal punctuation omitted); see also LLT Int'l v. MCI Telecommc'ns Corp., 69 F. Supp. 2d 516, 520 (S.D.N.Y. 1999) ("[A]n account stated refers to an express or implied promise by a debtor to pay a stated sum of money which the parties have agreed is the amount due.").

In order to establish a claim for an account stated, Cobblestone must show that "(1) an account was presented, (2) it was accepted as correct; and (3) debtor promised to pay the amount stated." IMG Fragrance Brands, LLC v. Houbigant, Inc., 679 F. Supp. 2d 395, 411 (S.D.N.Y. 2009). It is undisputed here that Cobblestone's invoices to The Lembi Group did not constitute an agreement to pay independent of the amounts allegedly due under the Agreement.

Thus, while the parties dispute whether The Lembi Group accepted the invoices as correct, a claim for account stated is inappropriate. Because Cobblestone seeks to enforce The Lembi Group's obligations under the Agreement, it cannot properly maintain an action for an account stated. Accordingly, The Lembi Group's motion for summary judgment on this claim is granted.

IV.  Unjust Enrichment

Cobblestone also argues that it is entitled to damages for unjust enrichment because it secured loan extensions for entities other than The Lembi Group Partners LLC and it secured the release of payment guarantees for the Individual Defendants. While Cobblestone initially argued that an unjust enrichment claim was necessary because no entity named "The Lembi Group" exists, Cobblestone now asserts that "The Lembi Group" referred to all of the borrowing entities for whom Cobblestone secured extensions.

Since all of the entities constituting the Lembi Group are bound by the Agreement, a claim for unjust enrichment is inappropriate. See Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp., 418 F.3d 168, 175 (2d Cir. 2005) ("New York law does not permit recovery in quantum meruit . . . if the parties have a valid, enforceable contract that governs the same subject matter as the quantum meruit claim.").

As for the releases, Cobblestone acknowledges that the Agreement is silent with respect to the Individual Defendants' payment guaranties. Because there is no separate written instrument memorializing the parties' agreement for the negotiation of releases, this Court declines to create one. Further, Cobblestone received no consideration in exchange for this supposed contract modification. (Hr'g Tr. 7-8.) Where, as here, the parties' business

relationship is defined by an express written contract, recovery for unjust enrichment is unavailable. See Mid-Hudson, 418 F.3d at 175. As such, The Lembi Group's motion for summary judgment is granted with respect to Cobblestone's unjust enrichment claims.

V.   The Lembi Group's Counterclaims

The Lembi Group brings counterclaims against Cobblestone for breach of contract and false representations in connection with the Agreement. Cobblestone has not moved for summary judgment on these counterclaims. But at oral argument, this Court questioned Defendants about their counterclaims and they conceded that the counterclaim for breach of contract should be dismissed because there is no basis to assert that Cobblestone breached the Agreement. (Hr'g Tr. 16-17.) And because Cobblestone performed its obligations under the Agreement, there is no evidence supporting The Lembi Group's false representation counterclaim. Following oral argument, The Lembi Group offered nothing to assuage this Court's concerns regarding the meritless counterclaims. Accordingly, this Court awards summary judgment to Cobblestone dismissing The Lembi Group's counterclaims.

## CONCLUSION

For the foregoing reasons, the parties' dueling motions for summary judgment are granted in part and denied in part. Specifically, Cobblestone's motion for summary judgment on its breach of contract claim concerning twelve loan extensions that Cobblestone secured for The Lembi Group is granted. All of the Corporate Defendants, and not merely The Lembi Group Partners, LLC, are jointly liable to Cobblestone for the breach of contract claim. Further, this Court grants The Lembi Group's motion for summary judgment dismissing Cobblestone's account stated and unjust enrichment claims. In all other respects, the motions for summary judgment are denied. This Court also grants summary judgment in Cobblestone's favor dismissing The Lembi Group's counterclaims. The parties are directed to submit a judgment by December 2, 2011. The Clerk of the Court is directed to terminate all pending motions and mark this case as closed.

Dated: November 22, 2011
      New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.

*Counsel of Record*

Robert Lawrence Strassberg, Esq.
Strassberg & Strassberg, P.C.,
57 West 38th Street
New York, NY 10018
*Counsel for Plaintiff*

Michael John Ciarlo, Esq.
Nadel & Associates, P.C.
3 East 54th Street
New York, NY 10022
*Counsel for Defendant*